UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDIS RODRIGUEZ MURILLO (A-235-766-350),<br>Petitioner,<br>v.<br>WARDEN GOLDEN STATE ANNEX, et. al.,<br>Respondents. | No. 1:26-cv-08531-DAD-CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Fredis Rodriguez Murillo (A-235-766-350), a citizen of Honduras, entered the United States in 2004 without inspection and later applied for asylum. In August 2026, U.S. Immigration and Customs Enforcement ("ICE") officers detained petitioner. Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] This habeas action concerns petitioner's ongoing detention. For the reasons that follow, the Court recommends that the petition be granted and petitioner be immediately released.

## I. FACTUAL BACKGROUND

Petitioner entered the U.S. in 2004 without inspection. (ECF No. 1-2 at 2; ECF No. 5 at 3.) He has four U.S. citizen children. (ECF No. 1-2 at 2; ECF No. 1-5.) Petitioner's criminal

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

history includes a 2011 conviction for possession or sale of a switchblade knife and three arrests for driving without a license. (ECF No. 5 at 12-19.) On April 10, 2025, petitioner submitted an application for asylum to U.S. Citizenship & Immigration Services ("USCIS"). (ECF No. 1-4 at 2-3.) On August 15, 2026, when petitioner was driving to work, ICE officers stopped petitioner's vehicle, detained petitioner, and initiated removal proceedings against him. (ECF No. 1-2 at 2; ECF No. 5 at 4, 7-10.)

## II. PROCEDURAL BACKGROUND

On October 17, 2026, petitioner filed the petition for writ of habeas corpus. (ECF No. 1.) On October 28, 2026, respondents filed an answer. (ECF No. 5.) Petitioner filed traverse on October 31, 2026. (ECF No. 6.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner claims that his current detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.[2] Respondents acknowledge that petitioner's detention is

[2] Petitioner also claims his detention violates the Immigration and Nationality Act. Because the Court is recommending release on due process grounds, the Court need not address petitioner's additional claims.

governed by 8 U.S.C. § 1226(a) and that petitioner is entitled to seek a bond hearing, but did not address petitioner's due process argument. The Court agrees that 8 U.S.C. §1226(a) governs petitioner's detention.

**B. Due Process**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of parole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation

marks and citation omitted).

Here, petitioner has a protected liberty interest in remaining out of custody where he lived freely in the United States for approximately 22 years and the U.S. Department of Homeland Security ("DHS"), which oversees both USCIS and ICE, was aware of petitioner's presence in the United States by way of his pending asylum application with USCIS. During his two decades of living in the United States, petitioner fathered and provided for four U.S. citizen children and applied for asylum. (ECF No. 1-2 at 2; 1-4 at 3.) Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in being free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). Petitioner remained free from immigration detention despite DHS knowing of his presence and undocumented status since at least 2025, when he applied for asylum. (See ECF No. 1-4 at 3.) Meanwhile, petitioner fathered four children and became gainfully employed. (ECF No. 1-2 at

2.) The 22-year duration of petitioner's presence in the U.S. free from immigration enforcement elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. Petitioner has minimal criminal history. See ECF No. 5 at 12-19. Respondents have not presented evidence of any changed circumstances that would warrant his detention in August 2026 rather than in 2025 when petitioner applied for asylum and made his presence known to immigration authorities. No neutral arbiter has determined that petitioner is a flight risk or a danger to the community, such that detention would be warranted.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner was entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent

concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief based on a violation of his procedural due process rights.

## V. CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on procedural due process grounds.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;

2. Respondents be ordered to IMMEDIATELY release petitioner Fredis Rodriguez Murillo (A-235-766-350) and be ordered to provide petitioner with a copy of these findings and recommendations and the release order at or near the time of release. If respondents have custody of petitioner's possessions or documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release;

3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231);

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

objections shall be filed and served within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 20, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

11/rodr8531.157.2241.imm.release